IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Albert Cobb and Stanley Leon Foster, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br>  v.<br><br>Arc Energy Services, Inc.,<br><br>      Defendant. | Civil Action No.: 0:21-cv-01913-JMC<br><br>**ORDER AND OPINION** |

This matter is before the court on Defendant Arc Energy Services, Inc.'s ("Arc") Motion to Dismiss and/or Strike. (ECF No. 5.) In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2)(g) D.S.C., the matter was referred to the United States Magistrate Judge for pretrial handling. On September 30, 2021, the Magistrate Judge issued a Report and Recommendation (the "Report") (ECF No. 21), recommending this court grant in part and deny in part Arc's Motion to Dismiss and/or Strike. For the reasons set forth below, the court **ACCEPTS IN PART** and **REJECTS IN PART** the Report and Recommendation (ECF No. 21), **GRANTS IN PART** and **DENIES IN PART** Arc's Motion to Dismiss (ECF No. 5), and **DISMISSES** Plaintiffs' discrimination and class action claims, leaving only Plaintiff Cobb's Fourth and Sixth Causes of action for retaliation.

      **I.  FACTUAL BACKGROUND**

The Report sets forth the relevant facts and legal standards, which this court incorporates herein without a full recitation. (ECF No. 21.) As set forth in the Complaint, Plaintiffs Albert Cobb ("Cobb") and Stanley Leon Foster ("Foster") (collectively, "Plaintiffs") are employed by Arc as specialty welders. (ECF No. 1 at 3–4 ¶¶ 14–15.) Cobb and Foster began working for Arc

1

in 2015 and 2016, respectively (*id.* at 5 ¶ 18), as seasonal employees on an as-needed basis (*id.* at 10 ¶ 47 11 ¶ 56.)

Arc is a welding and machining services provider based in Rock Hill, South Carolina. (ECF No. 1 at 4 ¶ 16.) Arc employs nearly 1,500 employees and provides contract staffing to the power generation and construction industries. (*Id.* at 4 ¶ 16.) Most of Arc's work is with federal contractors, such as Dominion Energy and Duke Energy. (*Id.* at 5 ¶ 20.) Plaintiffs allege that despite being a federal contractor subject to Executive Order No. 11246, Arc failed to self-identify as a federal contractor with the Office of Federal Contract Compliance Programs ("OFCCP") and/or file EEO-1 reports with the Equal Employment Opportunity Commission ("EEOC"). (ECF No. 1 at 5 ¶ 23 6 ¶ 26.) The failure to report hampered these agencies' monitoring efforts for racially discriminatory hiring and retention practices. (*Id.* at 6 ¶ 27.)

Cobb alleges that in January or February 2017, Cobb frequently heard a white co-worker, Chris Webster ("Webster"), use a racial epithet in the Arc shop area. (ECF No. 1 at 10 ¶ 48.) Prior to this incident, Cobb heard Webster make other racially-charged comments, and other white employees laughed in response. (*Id.* at 10 ¶¶ 49–50.) Cobb reported the racial harassment to Webster's supervisor and Cobb's own supervisor about the use of the racially offensive language in the workplace. (*Id.* at 11 ¶ 51.) Webster was told to apologize to Cobb, but Cobb does not believe that Webster was ever disciplined or that a Human Resources investigation was ever conducted. (*Id.* at 11 ¶ 52.) After complaining, Cobb felt that he was treated differently, shunned, and excluded. (*Id.* at 11 ¶ 53.) "Shortly after complaining about the racially offensive language," Cobb's supervisor told him there was no more work available to him. (*Id.* at 11 ¶ 54.) However, Cobb asserts that other less experienced, less senior, white employees were still retained to work. (*Id.*) Although another African-American welder informed Cobb between 2017 and 2020 that

work was available, no work has been available to Cobb since May 9, 2017. (*Id.* at 12 ¶¶ 57–60.)

Foster was employed and assigned by Arc from April 2016 through April 2017. (ECF No. 1 at 13 ¶ 67.) During that time, Foster was often assigned work by another African-American welder. (*Id.* at 14 ¶ 74.) When that employee was terminated, though, Foster did not receive any further work from Arc. (*Id.* at 14 ¶ 74.) After April 2017, Foster was never called for available work; however, Plaintiffs allege that another African-American Arc welder advised Foster that work was actually available. (*Id.* at 14 ¶ 69.) When Foster called to inquire about available work between 2017 and April 2020, he was not given any work assignments. (*Id.* at 14 ¶ 70.) According to Foster, Arc provided the available work to "Caucasian employees who were no more experienced or qualified." (*Id.* at 14 ¶ 75.) Foster further alleges that the "racially based denials of work and/or selectively based placement are an ongoing violation which continues to date." (*Id.* at 15 ¶ 78.)

During their employment with Arc, and while working at Duke Energy and Dominion Energy power plants, Plaintiffs observed that Arc employed few African-American workers. (ECF No. 1 at 7 ¶ 29.) Plaintiffs also observed that Arc staffed few African-American employees to the jobs to which Plaintiffs also were assigned. (*Id.*) Additionally, Plaintiffs noted that few African-Americans worked in the "augmented" power plant workforces comprised of jointly-employed workers. (*Id.*) Plaintiffs criticize Arc's hiring practices, specifically the use of word-of-mouth recruiting and use of the Arc employment list. (*Id.* at 8–10 ¶¶ 33–45.) Arc maintains a list of about 1,500 eligible workers, including Cobb and Foster. (*Id.* at 8 ¶¶ 37–38.) Plaintiffs allege that Arc's determination of who is listed and who will be assigned work from the list intentionally excludes African-Americans and/or has an adverse racial impact. (*Id.* at 9 ¶ 39.) Because Arc primarily employs Caucasian employees and relies on word-of-mouth recruiting, "only a handful"

3

of African-Americans have been added to the Employment List. (*Id.* at 9 ¶ 41.) Further, Plaintiffs allege that there were no more than five (5) or six (6) African-Americans in the entire Arc workforce. (ECF No. 1 at 14 ¶ 71.)

## II.     PROCEDURAL HISTORY

On October 22, 2020, Plaintiffs filed dual charges of discrimination with the OFCCP and the EEOC. (ECF No. 1 at 2–3 ¶¶ 7, 9). On March 26, 2021, OFCCP issued a Notice of Right to Sue as to Cobb's Title VII charge. (*Id.* at 3 ¶ 8.) On June 21, 2021, the EEOC issued a Notice of Right to Sue on Foster's Title VII charge. (*Id.* at 3 ¶ 10.) On June 24, 2021, Plaintiffs filed their Complaint "based on racially discriminatory recruitment, selection, assignment and retention practices favoring Caucasians to the detriment of African[-]Americans qualified and available to do the work." (*Id.* at 1.) On August 6, 2021, Arc filed its Motion to Dismiss and/or Strike. (ECF No. 5.) Plaintiffs filed a Response on September 3, 2021 (ECF No. 19) to which Arc filed a Reply (ECF No. 20).

On September 30, 2021, the Magistrate Judge issued the Report, recommending this court grant Arc's Motion to Dismiss and/or Strike in part and deny it in part, allowing only Cobb's individual claim for retaliation, asserted pursuant to 42 U.S.C. § 1981, to proceed.[1] (ECF No. 21 at 2.) The Magistrate Judge found that Plaintiffs' Title VII claims regarding events that occurred prior to December 27, 2019 are not actionable because Plaintiffs failed to timely exhaust their administrative remedies. (*Id.* at 8.) The Magistrate Judge went on to find that, even if Plaintiffs' claims were timely, Plaintiffs each failed to state a claim for discrimination under either Title VII or 42 U.S.C. § 1981. (ECF No. 21 at 9.) In finding that Plaintiffs failed to sufficiently allege

---

[1] The parties did not object to the Magistrate Judge's recommendation that the court deny Arc's Motion to Dismiss as to Plaintiff Cobb's § 1981 retaliation claim.

claims for discrimination, the Magistrate Judge determined that: (1) Plaintiffs' allegations that a white coworker used racially offensive language and was then told to apologize does not support an inference of unlawful discrimination; (2) Plaintiffs failed to allege facts demonstrating that the white employees who allegedly received work are appropriate comparators; and (3) Plaintiffs failed to provide any indication as to the qualified population in the relevant labor market or as to how many welders are employed by Arc. (*Id.* at 11–16.)  The Magistrate Judge noted that "Plaintiffs' allegation that only a very small percentage of Defendant's workforce is black is troubling, but insufficient to support an inference of unlawful discrimination, particularly where special qualifications are necessary to complete the work at issue." (*Id.* at 14–15.)

Turning to Plaintiffs' retaliation claims, the Magistrate Judge explained that a retaliation claim brought "pursuant to 42 U.S.C. § 1981 does not require exhaustion of administrative remedies and instead appears to be subject to the default four-year federal limitations period set forth in 28 U.S.C. § 1658." (ECF No. 21 at 17.)  The Magistrate Judge found that Cobb sufficiently stated a claim for retaliation because he "alleged a causal connection where he alleges close temporal proximity between complaining and being told there was no work for him and where he alleges that immediately following his complaints, he was treated differently and no longer provided any work." (*Id.* at 18.)  Finally, the Magistrate Judge determined that, based on her finding that Plaintiffs have failed to state a claim for discrimination, they have also failed to allege that they are members of the class they seek to represent. (*Id.* at 20.)

### III.     JURISDICTION

This court has jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331 because Plaintiffs allege violations of the laws of the United States.  Specifically, Plaintiffs bring claims pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991

5

("Section 1981") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.* ("Title VII"). (ECF No. 1.) Accordingly, the court has federal question jurisdiction over this matter.

## IV.     LEGAL STANDARD

A.     The Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The court reviews *de novo* only those portions of a magistrate judge's report and recommendation to which specific objections are filed and reviews those portions which are not objected to—including those portions to which only "general and conclusory" objections have been made—for clear error. *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1).

B.     Motion to Dismiss

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion "should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle

it to relief." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

## V.     ANALYSIS

A.     Plaintiffs' Objections

Plaintiffs argue that the Magistrate Judge erred in finding that Plaintiffs' Title VII discrimination claims were not timely, despite finding that three (3) of the acts occurred within the 300-day administrative filing period. (ECF No. 24 at 2–3.) Next, Plaintiffs contend that, in analyzing their discrimination claims, the Magistrate Judge "incorrectly applied the standard of review to the facts of this case, drew factual inferences in Defendant's favor, and did not consider the Fourth Circuit's cautionary language regarding dismissal of civil rights complaints." (*Id.* at 8.) Plaintiffs also assert the Magistrate Judge erred by failing to consider Arc's failure to report racial demographics to the OFCCP and the EEOC, Plaintiffs' personal observations regarding racial disparity, and statistical information as evidence supporting an inference of discrimination. (*Id.* at 20.) Finally, Plaintiffs argue their class discrimination claims should succeed if their individual claims go forward and issues relating to class certification should be reserved until after Plaintiffs file a motion for class certification. (*Id.* at 33.) Arc contends that Plaintiffs' objections merely

7

recycle arguments previously made and adequately addressed in the Report.  (ECF No. 25 at 1.)

B.   The Court's Review

1.   *Timeliness of Plaintiffs' Title VII Discrimination Claims*

First, Plaintiffs argue that the Magistrate Judge erred by failing to consider allegations regarding Arc's failure to hire Plaintiffs or assign work in April, August, and September of 2020. As the Magistrate Judge explained in the Report, under Title VII:

> a claimant is required to file a charge of discrimination with the EEOC within 180 days of the alleged discriminatory act or acts, or, if the alleged discrimination occurred in a "deferral state," then within 300 days of the alleged discriminatory act(s) if the claimant initially institutes proceedings with the appropriate state agency, or within thirty days of the state agency's termination of its proceedings, whichever is earlier. *See* 42 U.S.C. § 2000e-5(e). South Carolina is a deferral state, with the appropriate state agency being the South Carolina Human Affairs Commission ("SCHAC").

(ECF No. 21 at 6.)  As stated above, Plaintiffs filed dual charges of discrimination with the OFCCP and the EEOC on October 22, 2020.  (ECF No. 1 at 2–3 ¶¶ 7, 9.)  The Magistrate Judge assumed that Plaintiffs had 300 days to file their charges and therefore Plaintiffs' claims must have arisen on or after December 27, 2019.  (ECF No. 21 at 7.)  Plaintiffs argue their Title VII discrimination claims "are premised upon specific and distinct failures to hire/rehire that occurred in 2020, well within the 300-day administrative filing period."  (ECF No. 24 at 2.)  Specifically, Plaintiffs allege they contacted Arc seeking work in April, August, and September of 2020.  (ECF No. 1 at 13 ¶ 63, 14 ¶ 75.)  Plaintiffs concede their allegations regarding events that occurred outside of this period provide only "additional background and are relevant circumstantial evidence as to Defendant's racially charged working environment and practices."  (ECF No. 19 at 9.)

The court agrees that Plaintiffs have made allegations of failure to hire or assign work in the relevant time period, but upon review of the Report, also finds that, despite finding Plaintiffs' Title VII discrimination claims untimely, the Magistrate Judge went on to thoroughly review the

8

substance of the claims. (*See* ECF No. 21 at 9–16.) Similarly, the court will move to its review of Plaintiffs' objections to the Magistrate Judge's findings regarding the sufficiency of their claims.

### 2. *Review of Discrimination Claims*

Next, Plaintiffs challenge the Report's application of the pleading standard for termination or discharge discrimination claims instead of the standard for failure to hire or rehire discrimination claims. (ECF No. 24 at 8.) For their failure to hire claims, Plaintiffs must show that (1) they are members of a protected group, (2) there was a specific position or positions for which they applied, (3) they were qualified for the position(s), and (4) Arc rejected their applications under circumstances that give rise to an inference of discrimination. *Williams v. Giant Food Inc.*, 370 F.3d 423, 430 (4th Cir. 2004); *see also id.* at 430 n.5 (stating that "[t]he same elements are required for failure-to-promote claims alleged under Title VII and § 1981").

At the pleading stage, however, Plaintiffs "are not required to plead facts establishing a prima facie case of discrimination to survive a motion to dismiss[,]" although, they must allege sufficient facts "to satisfy the elements of a cause of action created by the relevant statute in compliance with *Iqbal*." *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017) (internal citations omitted). Accordingly, at this stage Plaintiffs need only allege sufficient "factual matter (taken as true) to suggest" a cognizable cause of action. *Id.* (citing *Twombly*, 550 U.S. at 556.). To state a § 1981 race-discrimination claim, Plaintiffs must allege facts making it plausible "that, but for race, [they] would not have suffered the loss of a legally protected right" under the statute. *Ali v. BC Architects Eng'rs, PLC*, 832 F. App'x 167, 171 (4th Cir. 2020) (citing *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020)). Similarly, to state a claim under Title VII, Plaintiffs are required to allege that Arc failed or refused to hire them because of

their race. *See McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (citing 42 U.S.C. § 2000e–2(a)(1)). Accordingly, the court's inquiry focuses on whether Plaintiffs allege facts that plausibly state violations "above a speculative level." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021).

The court finds that the Report applied the appropriate standard of review and properly found that Plaintiffs fail to state individual claims for discrimination. The crux of the issue at this juncture is whether Plaintiffs have alleged circumstances giving rise to an inference of discrimination. To this point, Plaintiffs argue that the alleged discriminatory conduct that took place outside of the 300-day period can be considered as context for their discrimination claims. Accordingly, Plaintiffs cite to their allegations that Arc knowingly allowed use of the racial epithets on its worksite as illustrated by its continued employment of the individual using the term, its failure to investigate such discrimination or take remedial action, and its treatment of Plaintiff Cobb following his report of such discrimination. (ECF No. 24 at 10–11.)

These events, which Plaintiffs contend occurred in 2017, are too remote and conclusory to support the 2020 events on which Plaintiffs base their discrimination claims. *See, e.g.*, *Song v. Becerra*, No. 20-1554, 2021 WL 3732961, at *2 (4th Cir. Aug. 24, 2021), *cert. denied*, 142 S. Ct. 1231 (2022) ("Additionally, the supervisor's isolated statement, which was made, at the latest, roughly four years before the denial of Song's volunteer application, is insufficient to give rise to an inference of discrimination in that denial."). Additionally, Plaintiffs have not connected the individuals to whom Plaintiff Cobb reported the racially charged comments with the individual or individuals authorized to assign work. *See Hawthorne v. Va. State Univ.*, 568 F. App'x 203, 204–05 (4th Cir. 2014) ("[T]o make out a claim for individual liability under § 1981, a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action,"

10

and the claim "must be predicated on the actor's personal involvement.") (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000)).

Plaintiffs can, but are not required to, show comparator evidence to establish an inference of discrimination. Ordinarily, plaintiffs and comparators have "dealt with the same supervisor, were subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Gary v. Facebook, Inc.*, 822 F. App'x 175, 181 (4th Cir. 2020). In this case, Plaintiffs have presented comparator allegations regarding similarly situated Caucasian Arc employees, asserting that instead of hiring Plaintiffs, Arc hired Caucasian workers who were no better qualified than them. (ECF No. 1 at 10.) However, Plaintiffs have not set forth facts—such as the seasonal nature of the purported comparators' employment or the hiring supervisor such individuals report to—establishing meaningful similarity of the purported comparators. *See Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008) ("[t]he similarity between comparators . . . must be clearly established in order to be meaningful."); *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017).

Finally, although Plaintiffs contend that the Magistrate Judge improperly drew factual inferences in Arc's favor (ECF No. 24 at 8), conclusory allegations are not entitled to a presumption of truth. *Iqbal*, 129 U.S. at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."). Accepting as true the factual allegations contained in the Complaint and drawing all reasonable inferences therefrom in Plaintiffs' favor, the court finds that their allegations may be consistent with discriminatory conduct because of their race, "[b]ut given more likely explanations, they do not plausibly establish this purpose." *Id.* In this case, the "obvious

alternative explanation" for Plaintiffs' lack of work assignments is that there were no available placements for seasonal welders in their area during the relevant time period. *See id.* at 682. Plaintiffs do not allege that specific work assignments were publicly or internally posted requiring enumerated qualifications they possessed. Although Plaintiffs allege that they actively applied for at least three (3) specific welding assignments in 2020 through the standard methods for employees working with Arc (ECF No. 24 at 9), they have not presented allegations regarding the specific positions, the location of such positions, or how they met the qualifications for such positions. They merely assert that they were informed by an unnamed colleague or otherwise heard that work was available and being given to Caucasian employees. (ECF No. 1 at 12–13 ¶¶ 60–63, 14 ¶ 69.) Between the "obvious alternative explanation" for the alleged failure to assign work, and "the purposeful, invidious discrimination" Plaintiffs ask the court to infer, discrimination is not a plausible conclusion. *Iqbal*, 129 U.S. at 682 (citing *Twombly*, 550 U.S. at 567).

Accordingly, the court overrules Plaintiffs' objections, adopts the Report's finding that Plaintiffs have not alleged facts giving rise to a reasonable inference of intentional discrimination, and dismisses Plaintiffs' individual discrimination claims.[2]

### 3. *Timeliness of Cobb's Title VII Retaliation Claim*

Plaintiffs also object to the Report's conclusion that Cobb's Title VII retaliation claim is untimely because it is based on allegations that occurred outside of the 300-day filing period. (ECF No. 24 at 27.) Although some of Plaintiff Cobb's allegations regarding retaliation occurred outside of the 300-day period, he is not barred from filing charges "about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely

---

[2] Plaintiffs assert that their class discrimination claims under Title VII and § 1981 should proceed if their individual discrimination claims proceed. (ECF No. 24 at 33.) Because the court accepts the Magistrate Judge's recommendation regarding dismissal of the discrimination claims, Plaintiffs' class claims are also dismissed.

filed." *Martinez v. Potter*, 347 F.3d 1208, 1210–11 (10th Cir. 2003) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).  Further, the statute does not "bar an employee from using prior acts as background evidence in support of a timely claim."  *Id.*  Here, Cobb timely filed charges related to retaliatory failure to hire that occurred in 2020.  The court considers the allegations Cobb sets forth that occurred outside of the relevant time period as background to his retaliation claim.  As such, the court rejects the Report's finding that Cobb's Title VII retaliation claim is untimely.

### 4. *Plaintiffs' Remaining Objections*

Plaintiffs' remaining objections either restate arguments that were adequately addressed by the Report or are irrelevant to the court's analysis.[3]  The court declines to hear recycled contentions, analyzes the remainder of the Report for clear error, *see Orpiano*, 687 F.2d at 47, and finds the Report properly addresses relevant arguments and issues.  Finding no clear error, the court overrules Plaintiffs' remaining objections and adopts the Report herein.

---

[3] For example, although Plaintiffs contend the Magistrate Judge failed to properly consider their allegations regarding "inexorable zero" to support an inference of discrimination, the Report sets forth a detailed analysis of the statistics presented by Plaintiffs.  (ECF No. 21 at 13–16.)  Additionally, Plaintiffs argue that Arc's failure to report racial demographics to the EEOC and OFCCP supports an inference of discrimination.  (*Id.* at 23.)  However, Plaintiffs do not cite to, and the court has not found, any case law or other source of support for this position.

## VI.     CONCLUSION

For the reasons set forth above, the court **ACCEPTS IN PART** and **REJECTS IN PART** the Report and Recommendation (ECF No. 21), **GRANTS IN PART** and **DENIES IN PART** Arc's Motion to Dismiss (ECF No. 5), and **DISMISSES** Plaintiffs' discrimination and class action claims, leaving only Plaintiff Cobb's Fourth and Sixth Causes of action for retaliation.

**IT IS SO ORDERED**.

*J. Michelle Childs*
United States District Judge

March 31, 2022
Columbia, South Carolina